Donald J. Childs & another *vs.* Harbor Lounge of Lynn, Inc. & others.

Suffolk.    January 8, 1970. — February 10, 1970.

Present: Wilkins, C.J., Cutter, Kirk, Spiegel, & Reardon, JJ.

*Assignment for Benefit of Creditors. Escrow. Law or Fact. Words,* "Escrow."

The construction of a written contract of sale is a matter of law.    [35]
In an agreement for the sale of the assets of a corporation to a second corporation which was not attended with the formalities generally attending an assignment for the benefit of creditors but in which the buyer undertook to pay listed unsecured creditors of the seller "forthwith upon the passing of papers," a provision that a certain part of the purchase price should be "held in escrow for ninety . . . days . . . after performance of this agreement" was for the benefit of the seller and buyer therein and not for the benefit of all the seller's general creditors, and a creditor listed in the agreement was entitled to maintain a suit in equity under G. L. c. 214, § 3, to reach the money held in escrow and apply it to his debt.    [35–36]

Bill in equity filed in the Superior Court on January 17, 1968.

The suit was heard by *DeSaulnier,* J.

*Robert J. Morrissey* for the plaintiffs.

*Louis Karp,* for the defendants, submitted a brief.

Reardon, J.    This bill to reach and apply under G. L. c. 214, § 3, was brought by co-partners doing business as accountants under the name of United Services.    They had performed certain accounting services for the defendant Harbor Lounge of Lynn, Inc. (Harbor Lounge No. 1), a Massachusetts corporation.    They had brought an action for those services rendered by them for which they were unpaid and obtained on January 11, 1967, an execution from the Suffolk Superior Court in the sum of $2,920.02.    In addition they claimed to be owed for certain other services in the sum of $810.    The court found that

Harbor Lounge No. 1 was indebted to the plaintiffs in the total sum of $3,730.

In March, 1967, after the plaintiffs had rendered to Harbor Lounge No. 1 all the services for which this suit was brought, it sold all of its assets to a new corporation, also a defendant here, Harbor Lounge of Lynn, Inc. (Harbor Lounge No. 2). This sale was made pursuant to an agreement dated January 11, 1967, under the terms of which the new corporation was to retain the name of the old corporation. The sales agreement provided for transfer of the corporate assets of Harbor Lounge No. 1, and the buyer was to assume two mortgages, to pay unsecured obligations of that corporation according to the schedule attached to the agreement, and the sum of $16,000 in cash. The agreement specified that the buyer has "this day paid to the Seller the sum of Sixteen thousand dollars ($16,000.00) as a deposit, of which the sum of five thousand dollars ($5,000.00) shall be held in escrow for ninety (90) days by [the defendant] Attorney Harold Karp after performance of this agreement; Said amount of Sixteen thousand dollars ($16,000.00) is to be accounted for as part of the purchase price upon the performance of this Agreement by the parties." Mr. Karp was clerk of Harbor Lounge No. 1 and participated in the negotiation of the sale of its assets. The plaintiffs were listed under the name of United Services as creditors to be paid "forthwith upon the passing of papers." Not having been paid, they brought on January 17, 1968, this bill to reach and apply the money held by the defendant Harold Karp, who answered that he was still holding $5,000 delivered to him in escrow on January 11, 1967. The judge in a report of material facts and order for final decree stated as follows: "The court specifically rules that the sum of money held by the defendant Harold Karp was for the benefit of all of the creditors of Harbor Lounge # 1, and that the plaintiffs who are listed in the Bill of Sale as creditors are not entitled to reach and apply the money that is being held by attorney Harold Karp for the payment of the outstanding creditors in accordance with the Bill of Sale

executed by Harbor Lounge # 1 and Harbor Lounge # 2."
The plaintiffs' bill was then dismissed.

Before us is a full report of the evidence, both oral and
documentary. There is nothing in the reported testimony
to substantiate the judge's finding that a sum held by
Mr. Karp was to be held for all the creditors of Harbor
Lounge No. 1. We go, therefore, to a review of the docu-
mentary evidence. In making that review we stand in the
same position as did the trial judge and are enabled to reach
our own conclusion unaffected by his findings. *Berry* v.
*Kyes,* 304 Mass. 56, 57, and cases cited. The construction
of the contract of sale is a matter of law. *Brand* v. *Sterling
Motor Car Co.* 249 Mass. 318, 322. *Jacobson* v. *Jacobson,*
334 Mass. 658, 661. We are of the belief that the judge's
conclusion that an escrow was created for the benefit of the
creditors was not warranted in law, not only because none of
the formalities generally attending an assignment for the
benefit of creditors was observed (see G. L. c. 203, §§ 40–42),
but the use of the word "escrow" itself tends to negate the
contention that the money held by Mr. Karp was designed
"for the payment of the outstanding creditors."

To deposit a sum in escrow is simply to deliver it to a
third party to be held until the performance of a condition
or the happening of a certain event. While our cases have
dealt largely with instruments for the conveyance of land
(see *Wheelwright* v. *Wheelwright,* 2 Mass. 447, 453; *Foster* v.
*Mansfield,* 3 Met. 412, 415), the term has long been com-
monly used "with respect to all written instruments as well
as to the deposit of money." *Gulf Petroleum, S. A.* v.
*Collazo,* 316 F. 2d 257, 261 (1st Cir.). See *Oppenheim* v.
*Colten,* 291 Mass. 234. We agree with the plaintiffs that the
escrow set up under the agreement for purchase and sale
was for the benefit of the seller and the buyer therein and
not for general creditors. The ninety day limitation placed
upon the date seems so to indicate, and while the conditions
are not as clearly set forth as they might have been the
fund appears to be one established as a safeguard against
the happening of any one of a number of contingencies

upon which the plaintiffs had a right to reach and apply in satisfaction of their claim against the seller. It follows that the final decree dismissing the bill is reversed. A new decree is to be entered providing that the sum of $5,000 in the hands of Mr. Karp is to be applied to satisfy the indebtedness of Harbor Lounge No. 1 to the plaintiffs in the principal sum of $3,730, with interest from January 17, 1968, and with costs, and dismissing the bill as to the defendants Gauthier and Brezniak.

*So ordered.*