■ JANE GLADSTEIN, Appellant, v CHRISTOPHER H. MARTORELLA, Defendant. iSTAR FM LOAN LLC, Intervenor-Respondent. [904 NYS2d 418]—

Order, Supreme Court, New York County (Louis B. York, J.),

entered August 19, 2009, which granted proposed intervenor's (iStar) motion to intervene as a plaintiff, directed amendment of the summons and complaint to reflect the intervention, and preliminarily enjoined the parties, pending further order of the court, from removing any of the funds presently on deposit with the court, reversed, on the law and the facts, with costs, iStar's motion to intervene denied, and the injunctive relief vacated.

Plaintiff sued defendant for breach of contract and was initially granted summary judgment for $2 million, but, upon reargument, the IAS court reversed itself, and, as a condition of granting defendant the related relief of restraining plaintiff from seeking to enforce its contract rights, defendant deposited with the court the amount in dispute, $2 million. This Court reversed that order (*Gladstein v Martorella*, 71 AD3d 427 [2010]), making plaintiff, once again, defendant's judgment creditor.

Entirely unrelated to plaintiff's contract with defendant or any of the issues of law and fact involved in plaintiff's action to enforce that contract, iStar was the assignee of a mortgage, secured by, inter alia, insurance proceeds arising from any claims in connection with the mortgaged Pennsylvania premises owned by 1419 Tower LP, an entity allegedly controlled by defendant. Tower litigated an insurance claim against its carrier in a Philadelphia court and recovered more than $5 million, which it deposited in its general revenue accounts, and, in the meantime, defaulted on the mortgage. iStar claimed entitlement to the insurance proceeds recovered by Tower, but Tower had apparently already expended the proceeds; the $2 million that was deposited by defendant with the court in the present action seems to have been withdrawn from Tower's general revenue accounts before iStar made any demands for the insurance proceeds.

Since there are no issues of law or fact that iStar's claim to the insurance proceeds has in common with the present action, there is no basis to allow it to intervene in the present action as a matter of judicial discretion under CPLR 1013. Moreover, such an intervention would significantly prejudice plaintiff by potentially depriving her of the funds to which she already enjoys an entitlement by reason of her judgment. Nor is iStar entitled to intervene as a matter of right pursuant to CPLR 1012, since its legal rights are not adversely affected by plaintiff's judgment, regardless that the practical pecuniary effect of that judgment's enforcement will be to hinder iStar's enforcement of its security interest. iStar's interest is not with the judgment itself, but in reaching the deposited funds, to which, as we have held, plaintiff is entitled.

Furthermore, since it appears that the insurance proceeds were not placed in a segregated account but, rather, were commingled with Tower's other revenues and expenses, it cannot be determined as a matter of law whether the deposited funds were ultimately derived, in whole or in part, from the insurance proceeds. Thus, the insurance proceeds that were received into and moved among Tower's accounts, and in diverse manners paid out of its accounts, are not "identifiable," and therefore not subject to iStar's claimed security interest (UCC 9-315 [a] [2]; [b] [2]). But even if iStar's accounting and tracing methodology were to be credited, and the insurance proceeds were found to be identifiable, they would still not be subject to iStar's claimed security interest because Tower, the debtor, was no longer in possession of the proceeds when iStar first demanded them, and there is no record indication of any collusion by plaintiff with Tower to violate iStar's rights as a secured creditor (UCC 9-332 [a], [b]). Concur—Andrias, J.P., Saxe, Sweeny and Catterson, JJ.

Nardelli, J., dissents in a memorandum as follows: The proposed complaint by the intervenor alleges that $5,500,000 of insurance proceeds were deposited into an account maintained by 1419 Tower LP on May 12, 2008, and that defendant in this action, Christopher Martorella, is the "principal and controlling person" of 1419 Tower. The complaint further alleges that $2,000,000 of that deposit was then transferred to a checking account belonging to 1419 Tower on May 23, 2008, and, in turn, a transfer of $2,000,000 was made from that checking account to an escrow account belonging to an attorney representing Martorella in this matter. None of these facts are disputed. Further, defendant Martorella himself admits that on May 23, 2008, his counsel deposited $2,000,000 with the Clerk of Supreme Court, New York County "for the purpose of providing security to [plaintiff] Jane Gladstein regarding the judgment she docketed on April 28, 2008." Martorella claims that the transfer of $2,000,000 from 1419 Tower to his attorney's escrow account was to reimburse him for loans he had made to 1419 Tower totaling over $8,000,000, but there is no documentation offered.

If, indeed, Martorella had loaned money to 1419 Tower, it presumably would be free to transfer money to him. That is an issue, however, this Court need not, or should not, decide at this juncture. The only issue presented on this appeal is whether iStar FM Loan LLC should be permitted to intervene. While the bona fides of its dispute with 1419 Tower are the subject of an action in Pennsylvania, iStar certainly has presented in its proposed intervenor complaint a scenario in which significant

factual issues exist as to whether the funds now on deposit with the Clerk of the Court were actually converted by Martorella.

CPLR 1012 (a) (3) permits intervention as of right "[w]hen the action involves the disposition or distribution of . . . property and the person may be affected adversely by the judgment." The issue here is entitlement to the $2,000,000. Certainly, iStar will be adversely affected if the money is released to Gladstein before there has been a determination as to whether it has an interest in the funds. Denial of the request to intervene is tantamount to a determination on the merits that it has no interest in the money, and that Martorella's claim that he was owed money by iStar is beyond question. On this record, I am unable to draw such a conclusion.

As the motion court observed, iStar simply seeks to have the $2,000,000 remain where it is pending a final adjudication of the rights of all parties. The action in Pennsylvania will determine the dispute between iStar and 1419 Tower, including, presumably, whether there was a conversion of corporate funds. The courts of this state will still have the ultimate say as to who has a superior claim to the money on deposit, but that issue can better be resolved after iStar is permitted to intervene.

Although I agree with the majority's conclusion that iStar's legal rights are not affected by the judgment obtained by Gladstein against Martorella, ultimately, the determinative issue will not be the consequences derived from obtaining a judgment. Rather, it will be whether iStar has an entitlement to funds that may have been converted to its detriment, regardless of any judgment obtained by Gladstein.

Additionally, the majority's conclusion, presumably as a matter of law, that the $2,000,000 does not constitute identifiable proceeds under UCC 9-315 is perplexing, since the $2,000,000 that was ultimately deposited in the court can readily be traced back to the proceeds of the insurance settlement. Finally, the conclusion that UCC 9-332 is relevant is also perplexing since Gladstein is not yet a transferee who has received the $2,000,000. She is, at this stage, only a judgment creditor with regard to the $2,000,000, and a judgment debtor has deposited money in court in an effort to secure a judgment. Whether Gladstein ultimately prevails in her claim will be dispositive of whether she actually becomes a transferee of the money at the heart of this litigation. Until that time, however, Gladstein remains a claimant. **[Prior Case History: 2009 NY Slip Op 31861(U).]**