BARBARA McEACHERN, trustee,[1] *vs.* THOMAS BUDNICK.

No. 11-P-343.

Hampden. January 10, 2012. - April 2, 2012.

Present: GREEN, BROWN, & AGNES, JJ.

*Trust,* Amendment and modification. *Practice, Civil,* Summary judgment.

In a civil action, the judge erred in ordering the plaintiff trustee to convey certain property to the defendant, where the summary judgment record did not permit resolution of the question whether amendments to the trust agreement, directing distribution of the property to the defendant, had been delivered to the trustee in accordance with the trust agreement's provision on amendment, despite the grantor and the trustee being the same person, in that the record included evidence that the grantor had expressed her intention at the time she executed each of the two amendments that it should not become effective until after she had given the matter further consideration. [515-518]

SUMMARY PROCESS. Complaint filed in the Western Division of the Housing Court Department on December 5, 2008.

After transfer to the Superior Court, the case was heard by *Robert G. Fields*, J., sitting under statutory authority, on motions for summary judgment, and a motion for reconsideration was also heard by him.

*Wendy H. Sibbison (Patricia A. DeJuneas* with her) for the plaintiff.

*Marion T. Rosenau* for the defendant.

GREEN, J. The plaintiff trustee appeals from a summary judgment of the Superior Court, ordering her to convey certain property to the defendant. At issue is the conclusion of a judge of the Housing Court, sitting by designation,[2] that the execution of an amendment to a trust instrument by an individual who is both trustee and settlor of a trust automatically constitutes

[1]Of the Mildred M. Budnick Revocable Trust.
[2]See G. L. c. 211B, § 9.

delivery of the instrument of amendment, without regard to evidence proffered to demonstrate that the individual signing the amendment did not intend to complete delivery, or cause the instrument of amendment to become effective, until satisfaction of some future event or condition. We reverse the judgment and remand for further proceedings.

*Background.* We summarize the undisputed facts appearing on the summary judgment record; to the extent the record includes disputed evidence, we consider that evidence in the light most favorable to the plaintiff, against whom summary judgment entered on the parties' cross motions. See *Ritter* v. *Massachusetts Cas. Ins. Co.*, 439 Mass. 214, 215 (2003).

On April 1, 1992, Mildred M. Budnick (Mildred), as grantor, established a revocable inter vivos trust under the Mildred M. Budnick Revocable Trust Agreement (trust agreement), recorded that day in the Barnstable County registry of deeds in book 9058, page 252. The trust agreement named Mildred the sole trustee of the trust, and provided that, in the event of Mildred's resignation or incapacity, her daughter, Barbara A. McEachern (Barbara), would become the successor trustee.

Under art. III, pars. A-D of the trust agreement, upon Mildred's death the trustee was instructed to distribute the trust estate proportionally among four beneficiaries (if then living)[3]: (i) ten percent to Thadeus Budnick, Mildred's brother-in-law; (ii) twenty percent to Heather M. McEachern, Mildred's granddaughter; (iii) twenty percent to Ross M. McEachern, Mildred's grandson; and (iv) the balance to Barbara. The last paragraph of art. III expressly stated that Mildred intentionally made no provision for her son, the defendant Thomas P. Budnick (Thomas).

Under art. II, par. D of the trust agreement, Mildred reserved "the right during her lifetime, except during any period when she is certified incompetent . . . , at any time and from time to time, by an instrument in writing, signed and acknowledged by Grantor and delivered to the Trustee: . . . (2) [f]rom time to time to alter or amend this instrument in any and every

---

[3]If any named beneficiary predeceased Mildred, such beneficiary's share was to be distributed per stirpes; if no named beneficiaries remained living at the time of Mildred's death, the trust property was to be distributed to Christ the King Church, of Ludlow.

particular." On September 6, 1996, Mildred retained attorney John F. Soja to prepare a written amendment to the trust agreement (1996 amendment). The 1996 amendment eliminated the last paragraph of art. III (stating that the grantor intentionally had made no provision for Thomas) and replaced it with the following:

> "Notwithstanding the provisions of paragraphs A) to D) hereabove, the trustee shall distribute the real estate at 19 Harding Avenue, Ludlow, Hampden County, Massachusetts to the Grantor's son, Thomas P. Budnick."

Mildred signed the 1996 amendment and acknowledged her signature before a notary public while at Soja's office, but asked him to give her the original document to hold "until she made up [her] mind as to whether or not she wished to change the trust as it applied" to Thomas.[4] Mildred left Soja's office with the document and did not return it to him. The document was never recorded with the registry of deeds, and its whereabouts are unknown.[5]

On July 7, 2005, Mildred again asked Soja to prepare an amendment to the trust agreement (2005 amendment).[6] Like the 1996 amendment, the 2005 amendment replaced the last paragraph of art. III of the trust agreement with a paragraph providing for distribution to Thomas of the property at 19 Harding Avenue, Ludlow, upon Mildred's death.[7] As she had in 1996, Mildred signed the 2005 amendment and acknowledged her

---

[4]The record indicates that Soja advised Mildred (incorrectly) that the 1996 amendment would not become effective unless and until it was recorded with the Barnstable registry of deeds. Under G. L. c. 203, § 3, instruments amending a recorded trust must be recorded in order to bind third parties without notice, but recording is not essential to the effectiveness of the amendment as among parties who have actual notice of the amendment. Had it occurred, of course, recording would have constituted conclusive evidence of delivery. See G. L. c. 183, § 5.

[5]Though the original document has not been located, the record includes a photocopy of the signed instrument, and the parties do not dispute its accuracy.

[6]Both the 1996 amendment and the 2005 amendment were denominated "First Amendment to Mildred M. Budnick Revocable Living Trust Agreement." For the sake of clarity, we refer to each by reference to the year in which it was prepared and signed.

[7]The 2005 amendment also included language providing for distribution from the trust to Thomas of "any automobile the grantor [*sic*] may own at her

signature before a notary public while at Soja's office. In 2005, however, in addition to signing the 2005 amendment, Soja also prepared, and Mildred signed, the following documents: (i) a quitclaim deed conveying to the trust the property at 19 Harding Avenue, Ludlow; (ii) a health care proxy naming Barbara as Mildred's health care agent; and (iii) a new will, under which (among other provisions) Thomas was to receive whatever automobile Mildred owned at the time of her death. Mildred instructed Soja to record the deed conveying 19 Harding Avenue to the trust with the Barnstable registry of deeds but (as she had in 1996) took the original executed 2005 amendment with her "until she made up her mind about adding [Thomas] to the trust."[8] She "indicated that she was unsure [about adding Thomas to the trust] because he had been institutionalized for mental illness and had served jail time as well."[9]

Mildred died on February 27, 2007. On December 5, 2008, Barbara commenced an action in the Housing Court, seeking summary process to evict Thomas from the property at 19 Harding Avenue, Ludlow. In his answer, Thomas asserted that he was the rightful owner of the property, under the terms of the trust as amended.[10] The matter was transferred to the Superior Court, and the assigned justice of the Housing Court was specially designated to adjudicate it. See G. L. c. 211B, § 9. The judge initially denied the parties' cross motions for summary judgment, based

___

death," and amendments to two other provisions of the trust agreement relating to Thadeus Budnick, in ways not relevant to the issues raised in the present appeal. The effect of a provision in the trust providing for distribution from the trust of an automobile owned by the grantor (rather than the trust) is not immediately clear, but the question does not bear on the issues raised in this appeal.

[8]Like the 1996 amendment, the whereabouts of the original 2005 amendment are unknown, but the parties do not dispute the accuracy of the photocopy of it included in the record. See note 5, *supra*.

[9]Mildred expressed certainty concerning her decision to devise her automobile to Thomas under her new will, however; she stated that she had included provision for such a transfer in both the 2005 amendment and her new will so that "in the event that she did not proceed with the trust amendment, he would receive the car through her will."

[10]The answer did not specify whether Thomas relied on the 1996 amendment or the 2005 amendment. In his memorandum opposing Barbara's motion for summary judgment and supporting his cross motion, Thomas refers to both instruments.

on disputed questions of fact concerning Mildred's intent to deliver either the 1996 amendment or the 2005 amendment. However, on Thomas's motion for reconsideration, the judge concluded that the amendments were indeed effective because at the time she executed both amendments, Mildred was both grantor and sole trustee of the trust, so that delivery was automatic upon completion of her signature. This appeal followed.

*Discussion.* "Where a trust instrument explicitly provides for a power and method of modification, that power 'must be exercised in strict conformity to its terms.' " *Fogelin* v. *Nordblom*, 402 Mass. 218, 223 (1988), quoting from *Phelps* v. *State St. Trust Co.*, 330 Mass. 511, 512 (1953). See *Bongaards* v. *Millen*, 440 Mass. 10, 15 (2003). As we have observed, art. III, par. D of the trust imposed four requirements for any amendment thereto: (i) a written instrument, (ii) signed by the grantor, (iii) acknowledged by the grantor, and (iv) delivered to the trustee. Satisfaction of the first three requirements is not at issue in the present case; the parties divide solely on the question of delivery.

Under Massachusetts law, delivery of a written instrument amending a trust (as of a deed of conveyance) is principally a question of intent. See *Kirschbaum* v. *Wennett*, 60 Mass. App. Ct. 807, 813 (2004), quoting from Bogert, Trusts and Trustees § 147, at 60, 63 (2d rev. ed. 1979) ("delivery 'in the best modern usage means the manifestation of an intention that the instrument in question shall have operative effect. It does not necessarily refer to possession of the instrument or to transfer of the document from hand to hand' "). See also *Silbert* v. *Equitable Life Assur. Soc. of the U.S.*, 314 Mass. 406, 408 (1943) (delivery requires a "relinquishment of control over the instrument by the grantor or promisor with intent to make it a finality").[11] "Delivery means more than physical transfer of possession. Where both parties lack the intention that any interest shall presently pass to the grantee or assignee named in the instrument, there is no effective delivery, though the instrument be handed over." *Murphy* v. *Smith*, 291 Mass. 93, 94 (1935), and cases cited. A person's intent is a question of fact, "to be

---

[11]The question of delivery of an instrument of trust (or of amendment thereto) is equivalent to that of similar instruments of transfer not in trust. See *Silbert, supra.*

determined from his declarations, conduct and motive, and all the attending circumstances." *Galotti* v. *United States Trust Co.*, 335 Mass. 496, 501 (1957), quoting from *Casey* v. *Gallagher*, 326 Mass. 746, 749 (1951).

With these principles in mind, it is manifest that the question whether the 1996 amendment or the 2005 amendment was delivered cannot be resolved on the summary judgment record. The summary judgment record includes evidence that Mildred expressed her intention at the time she executed each of the two amendments that it should not become effective until after she gave the matter further consideration. If accepted, such evidence negates satisfaction of the requirement under the trust agreement of delivery as a condition of the effectiveness of any instrument of amendment.

Thomas nonetheless argues that the circumstances of the present case should not be governed by the general principle, since a single individual (Mildred) was both settlor of the trust and its sole trustee at the time she executed each of the two amendments. In such circumstances, insisting on proof of delivery is unnecessary, Thomas contends, since the trustee necessarily is in possession of the amendment upon its execution by the settlor. The argument is flawed in several respects.

First, to the extent the argument suggests that we should dispense with the requirement of delivery entirely, it ignores the express terms of the trust establishing delivery as a necessary precondition to any amendment of the trust.[12] As we have observed, of course, the provisions of a trust agreement concerning the means by which it may be amended are applied strictly. See *Bongaards* v. *Millen*, 440 Mass. at 15.

More fundamentally, in its emphasis on the trustee's physical possession of the trust amendment at the time of its execution, the argument simplistically (but incorrectly) supplants the essential question of intent with that of physical transfer, for purposes of ascertaining whether delivery has occurred. In so doing, it ignores extrinsic evidence of intent, drawn from the circumstances in which both trust amendments were executed.[13] It has

---

[12]We note that Mildred was both settlor and trustee at the time she executed the trust agreement, including the requirement of delivery.

[13]Thomas suggests that extrinsic evidence of intent not only may but must

long been recognized in Massachusetts that a deed or other document may be placed in escrow, in which the instrument is physically transferred from the grantor to another party, under a condition that delivery shall not occur, and the instrument accordingly shall not become effective, until satisfaction of one or more escrow conditions. See, e.g., *Foster* v. *Mansfield*, 3 Met. 412, 415 (1841). See also *Mather* v. *Corliss*, 103 Mass. 568, 571 (1870); *Daggett* v. *Simonds*, 173 Mass. 340, 347 (1899). Moreover, as we have observed, physical transfer of an instrument will not complete delivery where the parties to the instrument lack the intention that any interest be transferred by the instrument at that time. See *Murphy* v. *Smith*, 291 Mass. at 94.

The cases Thomas cites from other jurisdictions to suggest that we adopt a conclusive rule treating a signed instrument as delivered upon execution, whenever the grantor and trustee are the same individual, are inapposite. None in fact adopted such a rule, and none involved evidence of an expressed intention that delivery not occur until occurrence of some future event or satisfaction of some further condition. Compare *Barnette* v. *McNulty*, 21 Ariz. App. 127, 129-130 (1973); *Whittaker* v. *Stables*, 339 Ill. App. 3d 943, 948 (2003); *In re Trust Created by Cease*, 267 Neb. 753, 760 (2004); *Paul* v. *Arvidson*, 123 P.3d 808, 810-811 (Okla. Civ. App. 2005).[14]

Finally, we observe that evaluating the question of delivery under ordinary principles in circumstances where the grantor and trustee are the same individual, rather than employing a fixed and conclusive rule treating all such instruments as delivered by operation of law immediately upon execution, does

be ignored in the present case, contending that such parol is inadmissible in the absence of demonstrated ambiguity in the instrument of amendment itself. The argument misses the mark. The question is not one of construing the meaning of the instrument of amendment, but whether it was delivered. Since the question of delivery of an instrument is by its very nature extrinsic to the terms of the instrument itself, it often rests on parol evidence. See, e.g., *Howland* v. *Plymouth*, 319 Mass. 321, 324 (1946); *Eckstrom* v. *Eckstrom*, 327 Mass. 140, 142 (1951).

[14]We note that the court in *In re Trust Created by Cease*, *supra*, appears to have excluded parol evidence on the question of intent. For the reasons we have noted, however, we disagree with such application of the parol evidence rule to evidence of intent concerning the question of delivery. See note 13, *supra*.

not (as Thomas suggests) lead to an absurd result. It requires no particular stretch of imagination to envision circumstances in which a party may wish for reasons of convenience to have documents prepared on a provisional basis, and then (again for reasons of convenience) to execute and acknowledge them but have them held in escrow pending occurrence of a future event (which may in fact never materialize). The absurdity in such circumstances would not be the settled rule we follow today, but a rule in which such an escrow would either be given effect or not, depending on the fortuitous circumstance of the identity of the trustee.

The judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*