NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1439                                        Appeals Court


WILLIAM ZIMMERLING  vs.  AFFINITY FINANCIAL CORPORATION, & others.[1]


No. 13-P-1439.

Middlesex.     April 8, 2014.  -  August 18, 2014.

Present:  Berry, Katzmann, & Sullivan, JJ.


Practice, Civil, Action to reach and apply.  Escrow.  Uniform Commercial Code, Security interest, Secured creditor.  Words, "Transferee," "Interest in property."



Civil action commenced in the Superior Court Department on November 24, 2010.

The case was heard by Joseph M. Walker, III, J., on motions for summary judgment, and entry of final judgment was ordered by Kenneth W. Salinger, J.


Brian T. Moore, of Colorado (W. Matthew Iler, Jr., with him) for the plaintiff.
Thomas M. Elcock (Thomas Sutcliffe with him) for the interveners.

_____

[1] BHC Interim Funding II, LP, and BHC Interim Funding III, LP, interveners.

SULLIVAN, J. This appeal concerns the enforceability of security interests in funds deposited in an escrow account pursuant to an order of a judge of the Superior Court. The plaintiff, William Zimmerling (Zimmerling), and the interveners, BHC Interim Funding II, LP, and BHC Interim Funding III, LP, (collectively BHC), are creditors of Affinity Financial Corporation (Affinity). Zimmerling and BHC both lay claim to money owed to Affinity by AARP Financial, Inc. (AARP Financial). At issue is whether BHC's perfected security interests in the funds held by AARP Financial were extinguished because they were transferred from an AARP Financial bank deposit account to a court-ordered escrow account. See G. L. c. 106, § 9-332(b) (2001) (UCC § 9-332).[2] We conclude that the BHC security interests in the escrowed funds were not extinguished, and affirm the judgment awarding the amounts held in escrow to BHC.

Background. The case was decided on cross motions for summary judgment based on an undisputed record. In 2008 BHC advanced funds totalling $13.5 million to Affinity. Loan documents and security agreements were executed in connection with each of the two loans. Zimmerling does not dispute that

_____

[2] This section of G. L. c. 106 is identical to § 9-332 of the Uniform Commercial Code, 2000 Revision. For ease of reference, this provision is referred to by the code citation, i.e., UCC § 9-332.

these documents created valid security interests, that the security interests were perfected on or about January 15, and April 28, 2008, and that the security interests covered assets, after-acquired assets, and proceeds of assets.

By March of 2010 Affinity had defaulted on the loans, and BHC declared Affinity to be in default. Affinity's assets were insufficient to pay the loans. Affinity also owed money to Zimmerling, who had successfully arbitrated a claim for breach of an employment contract against Affinity. The Zimmerling award was confirmed by the United States District Court for the District of Colorado. A default judgment entered in favor of Zimmerling against Affinity in the amount of $370,930.39 on November 12, 2010.

Zimmerling immediately brought an action to enforce the Colorado judgment in Massachusetts. The enforcement action included a reach and apply action against AARP Financial, which owed Affinity substantial sums as a result of a different arbitration award issued in Affinity's favor. By orders dated November 24, 2010, December 14, 2010, and August 19, 2011, a judge of the Superior Court granted a preliminary injunction barring AARP Financial from "paying or transferring" any funds due Affinity, up to a value of $500,000, "pending resolution of this matter," and ordering AARP Financial to establish an escrow account as prejudgment security for Zimmerling. The Affinity

arbitration award was ultimately confirmed by the United States District Court for the District of Columbia.[3]  Thereafter, on April 13, 2012, the escrow account was funded.

BHC learned of the transfer to the escrow account from AARP Financial on or about April 13, 2012.  BHC notified Zimmerling of its claim that it had a superior perfected security interest in the funds on April 26, 2012, and intervened in the Massachusetts reach and apply action on May 11, 2012.  On May 17, 2012, the judge issued an amended order requiring that $500,000 remain in escrow pending resolution of all claims, including BHC's.  The judge subsequently entered judgment for BHC on cross motions for summary judgment.

Discussion.  Zimmerling does not dispute that BHC had superior perfected security interests in the funds held by AARP Financial that AARP Financial owed to Affinity.  Rather, Zimmerling contends that BHC's security interests in the escrowed funds were extinguished when the funds were sent by wire transfer from AARP Financial's deposit account to the escrow account.  Zimmerling maintains this constituted a transfer within the meaning of UCC § 9-332(b), which provides:

> "Transferee of funds from deposit account.  A transferee of funds from a deposit account takes the funds free of a

---

[3] The Federal District Court judgment was affirmed on appeal in an unpublished opinion.

security interest in the deposit account unless the
transferee acts in collusion with the debtor in violating
the rights of the secured party."

It is undisputed that the funds were transferred from a deposit account.  See UCC § 9-102(a).  There is no claim of collusion.  Therefore, the purely legal question presented is whether a transfer within the meaning of UCC § 9-332(b) took place that extinguished otherwise valid security interests in the transferred funds.[4]

The purpose of § 9-332 is to "afford[] broad protection to transferees who take funds from a deposit account and to those who take money."  See comment 2 to UCC § 9-332, 3 U.L.A. 377 (Master ed. 2010).  The Uniform Commercial Code does not define the term "transferee," except to state that a debtor is not a transferee.  See ibid.  Zimmerling, relying on the Black's Law Dictionary definitions of a transferee and an "interest in property," maintains that a transfer encompasses a conveyance of any interest in property, including a legal, equitable,

---

[4] Zimmerling acknowledges that as the debtor, Affinity is not a transferee, see comment 2 to UCC § 9-332(b), 3 U.L.A. 377 (Master ed. 2010), and that for this reason Affinity did not receive its interest in the transferred funds free and clear of BHC's security interests.  Other challenges to the validity of the security interests were argued below but have not been pressed on appeal.  We therefore assume, without deciding, that BHC had  valid security interests in the proceeds in the escrow account unless otherwise extinguished by UCC § 9-332(b).

contingent, or conditional interest in property.[5]  We conclude that this construction is contrary to the statute and is also contrary to the legislative purpose of UCC § 9-332. Accordingly, we affirm the judgment.

"In interpreting the meaning of a statute, we look first to the plain statutory language. . . .  'All the words of a statute are to be given their ordinary and usual meaning, and each clause or phrase is to be construed with reference to every other clause or phrase without giving undue emphasis to any one group of words, so that, if reasonably possible, all parts shall be construed as consistent with each other so as to form a harmonious enactment effectual to accomplish its manifest purpose.'"  Worcester v. College Hill Properties, LLC, 465 Mass. 134, 138 (2013), quoting from Selectmen of Topsfield v. State Racing Commn., 324 Mass. 309, 312-313 (1949).

The language of UCC § 9-332 contemplates an actual transfer of "funds" -- not an interest in funds -- to a "transferee." Zimmerling acknowledges that the funds were never transferred to him, but asserts that he had an equitable interest in receiving the funds at a future date if the judge found that he was

---

[5] Black's Law Dictionary defines transferee as "[o]ne to whom a property interest is given."  Black's Law Dictionary 1636 (9th ed. 2009).  An interest is defined as "[a] legal share in something: all or part of a legal or equitable claim to or right in property."  Id. at 884.

entitled to them.  This equitable interest was inherently contingent, however, because the judge had ordered that no payments be made until Zimmerling's right to the money was established.  "To deposit a sum in escrow is simply to deliver it to a third party to be held until the performance of a condition or the happening of a certain event."  Childs v. Harbor Lounge of Lynn, Inc., 357 Mass. 33, 35 (1970).[6]  Thus, the escrow arrangement was both conditional and contingent.

By its terms, UCC § 9-332 does not address the transfer of conditional or contingent interests in funds, only the transfer of actual money or funds.  See UCC § 9-332(a-b).  The words "interest in" funds do not appear in UCC § 9-332.  The official commentary to UCC § 9-332 references the payment of money, or the transfer of funds by check, cashier check, or wire transfer, all methods which contemplate a complete transfer of all

---

[6] "While our [escrow] cases have dealt largely with instruments for the conveyance of land (see Wheelwright v. Wheelwright, 2 Mass. 447, 453; Foster v. Mansfield, 3 Met. 412, 415), the term [escrow] has long been commonly used 'with respect to all written instruments as well as to the deposit of money.' Gulf Petroleum, S.A. v. Collazo, 316 F.2d 257, 261 (1st Cir. [1963]). See Oppenheim v. Colten, 291 Mass. 234." Childs v. Harbor Lounge of Lynn, Inc., 357 Mass. 33, 35 (1970).  See Daggett v. Simonds, 173 Mass. 340, 348 (1899) ("The doctrine in regard to the delivery of deeds in escrow is generally held applicable to promissory notes, and there is no good reason why it should not be").

interest in and control over the funds.  The plain language of the statue does not encompass the transfer of a partial, conditional, equitable interest in funds.

Those cases which recognize the transfer of a conditional or equitable interest in funds are based on statutes which explicitly define a transfer in that manner, and which serve different statutory purposes.  See 11 U.S.C. § 101(54)(D) (2012) (under the Federal Bankruptcy Code "'transfer' means. . . each mode, direct or indirect, absolute or conditional . . . of disposing of . . . property[] or an interest in property"); Matter of Newcomb, 744 F.2d 621, 626 (8th Cir. 1984) (holding that transfer to an escrow account constitutes a transfer under 11 U.S.C. § 101(40) and § 547(b), which govern "any transfer of an interest of the debtor in property").[7]  See generally G. L. c. 109A, § 2; G. L. c. 156D, § 3.02(4) (authorizing corporations to transfer legal or equitable interests in property); Bakwin v. Mardirosian, 467 Mass. 631, 643 (2014) ("Under the [Uniform Fraudulent Transfer Act], a transfer is defined as 'every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an

---

[7] At the time Matter of Newcomb, supra, was decided, the definition of transfer was found at 11 U.S.C. § 101(40).

interest in an asset'"). These definitions are not controlling here.

Zimmerling also claims that when the funds were wired to the escrow account, a UCC § 9-332 transfer was made to the escrow agent (his counsel). There is precedent to the effect that an escrow agent may have an equitable interest in escrowed property. See Grant v. Colonial Bank & Trust Co., 356 Mass. 392, 396 (1969). We need not reach the question whether an equitable interest in the funds was transferred to the escrow agent here, because even if there was a transfer of such an interest, legal title to the funds would not, under any circumstances, have been transferred to the escrow agent.[8] In the case of a transfer of funds to an escrow account, the escrow agent holds the funds in trust as a fiduciary, see NRT New England v. Moncure, 78 Mass. App. Ct. 397, 401 (2010), but the legal title to the funds remains at all times with the grantor,

---

[8] To the extent that Gladstein v. Martorella, 75 A.D. 3d 465(N.Y. App.Div. 2010) holds that mere physical possession of funds in escrow constitutes a transfer within the meaning of UCC § 9-332, we agree with the dissent in that case that a judgment creditor remains a claimant, not a transferee. (Nardella, J. dissenting). For similar reasons, we find the analysis in Bank of R.I. vs. Mixitforme, Inc., Superior Ct. of R.I., C.A., No. PM 06-1626 (Jan. 11, 2007), to be unpersuasive. In light of our disposition here, we need not reach the question whether a judgment creditor may be considered a transferee. See Orix Financial Servs., Inc. v. Kovacs, 167 Cal. App.4th 242, 250 (2008).

here AARP Financial.[9]  See Foster v. Mansfield, 3 Met. 412, 414-415 (1841); Daggett v. Simonds, 173 Mass. 340, 348 (1899); Artemis v. Malvers, 322 Mass. 136, 138 (1947); McEachern v. Budnick, 81 Mass. App. Ct. 511, 516-517 (2012) ("It has long been recognized in Massachusetts that a deed or other document may be placed in escrow . . . under a condition that delivery shall not occur, and the instrument accordingly shall not become effective, until satisfaction of one or more escrow conditions").  By placing the funds in escrow, AARP Financial did not lose its legal title to the funds, and the legal title to the funds would not transfer, within the meaning of UCC § 9-332, until such time -- if any -- as the escrow conditions were fulfilled:  that is, when the judge determined to whom the funds should be paid.

For these reasons, neither the escrow agent nor Zimmerling are transferees.  We agree with the New Hampshire Supreme Court that a transfer within the meaning of UCC § 9-332 takes place at the time that both legal and equitable title to escrowed funds pass to the beneficiary.  See Rabbia v. Rocha, 162 N.H. 734, 740 (2011).  The potential beneficiaries of the escrow, here

---

[9] Consideration of the common law of escrow is appropriate in limning the contours of the UCC.  "Unless displaced by the particular provisions of this chapter, the principles of law and equity . . . [shall] supplement its provisions."  G. L. c. 106, § 1-103(b) (2013).

Zimmerling and BHC, "hold[] an 'equitable interest' in the property, consisting of the right to obtain legal title to the property" when the conditions of the escrow are fulfilled.  In re NTA LLC, 380 F. 3d 523, 530 (1st Cir. 2004), quoting from Merchants Natl. Bank v. Frazier, 329 Ill. App. 191 (1946).  "When, however, 'the condition of performance is completed, ownership of the property in the escrow account immediately transfers.'"  Rabbia, supra at 739, quoting from McCarthy Bldg. Cos. v. St. Louis, 81 S.W.3d 139, 144 (Mo. Ct. App. 2002).  See Foster v. Mansfield, supra (same).

In Rabbia, the plaintiff obtained a favorable judgment enforcing a settlement, and ordering the release of escrowed funds.  Earlier in that litigation, the trial court had ordered the settlement proceeds to be paid into escrow; ultimately the escrowed funds were deposited with the court.  After the judgment requiring the disbursement of the funds to the plaintiff had been affirmed, but before the escrowed funds were disbursed, a finance company holding a perfected security interest in the defendant's assets sought to intervene in the trial court action in order to claim the amounts held in escrow. The trial judge allowed the intervener's motion to intervene and ruled that the escrowed funds should be paid to the intervener. The court reversed and held that once it had affirmed the judgment in the plaintiff's favor, which ordered the release of

the escrowed funds to the plaintiff, both legal and equitable title were transferred to the plaintiff; thus, a transfer within the meaning of UCC § 9-332 had occurred.  That transfer gave the plaintiff the right to take the escrowed funds free and clear of the intervener's security interest.

By contrast, in this case, the funds were at all times subject to the court's escrow order, which prohibited the escrow agent from disbursing the funds to either Zimmerling or BHC, absent further order of the court.  AARP retained legal title, and Zimmerling had only an equitable interest in the funds.  The conditions of the escrow were never fulfilled, because there was no court order releasing the funds to Zimmerling, and there was no transfer to Zimmerling of an equitable or legal interest that would satisfy the phrase "transferee of funds" within the meaning of UCC § 9-332.

This construction of the statute is more consistent with its "manifest purpose."  Worcester v. College Hill Properties, LLC, 134 Mass. at 139 (citation omitted).  The purpose of UCC § 9-332(b) would be ill-served by treating the transfer to an escrow account as a transaction which extinguishes a security interest in the transferred funds.  The policy considerations underlying UCC § 9-332 were expressly stated by the drafters. "Broad protection for transferees helps to ensure that security interests in deposit accounts do not impair the free flow of

funds. It also minimizes the likelihood that a secured party will enjoy a claim to whatever the transferee purchases with the funds." Comment 3, Policy, to UCC § 9-332, 3 U.L.A. 378 (Master ed. 2010). This policy places a premium on the "finality" of commercial transactions by protecting "completed" transactions from being placed in "jeopardy." Ibid. In layman's terms, the purpose of the provision is to keep the wheels of commerce moving forward, even where funds subject to a valid security interest have been transferred without the secured party's permission or for no value, subject to the collusion exception not invoked here.[10]

Applying UCC § 9-332(b) to a court-ordered escrow account would be contrary to this purpose. By definition, a court-ordered escrow account is the antithesis of finality. It is intended to forestall a final disposition of assets by preventing the completion of a transaction until the rights of the parties can be sorted out. Taken to its logical conclusion, Zimmerling's argument would render inoperable the use of escrow agreements in commercial transactions involving secured parties, because a transfer of funds to an escrow account would

---

[10] There is one exception for "bad actors" who act in collusion with the debtor. See comment 4 to UCC § 9-332, 3 U.L.A. 378 (Master ed. 2010). As previously noted, supra at 4, no claim of collusion has been made here.

automatically and irretrievably extinguish a secured party's security interest in the funds transferred from a deposit account, even if the party seeking the escrow was ultimately determined to have no right whatsoever to the funds.[11]  This result would run contrary to another one of the enumerated purposes of the UCC, namely to "to permit the continued expansion of commercial practices through custom, usage, and agreement of the parties."  G. L. c. 106, § 1-103(a)(2) (2013).[12] We do not read UCC § 9-332(b) to deprive those involved in commercial transactions of a valuable tool designed to settle disputes and facilitate commerce.  "If a sensible construction is available, [a court] shall not construe a statute to make a nullity of pertinent provisions or to produce absurd results." Plourde v. Police Dept. of Lawrence, 85 Mass. App. Ct. 178, 186 (2014), quoting from Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375-376 (2000).

Judgment affirmed.

---

[11] This scenario is yet another reason why UCC § 9-332 should not be construed to apply to a purely equitable, conditional, interest in an escrow account.

[12] This statute was amended as of July 1, 2013.  See St. 2013, c. 30, § 2.  In the earlier version, this language appeared at G. L. c. 106, § 1-102(2)(b).