Filed 07/16/25

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-00371

Cynosure, Inc. v. Champlain Valley Dispensary, Inc. et al

## DECISION ON MOTION TO DISSOLVE EX PARTE TRUSTEE PROCESS

In this action on a commercial lease, Plaintiff Cynosure, Inc., on a more than sufficient showing, obtained an *ex parte* Order of Approval of attachment of the nonexempt goods and estate of Defendant Champlain Valley Dispensary, Inc. ("CVD"). The Summons to Trustee subsequently served on Eastrise Credit Union (Eastrise) yielded the disclosure and attachment of two accounts held by Eastrise in CVD's name. Claiming an interest in those accounts superior to Cynosure's, Acquiom Agency Services LLC ("Acquiom") intervened and moved to dissolve the attachment. The court grants the motion.

### Factual Background

The court held an evidentiary hearing on this motion over the course of two days. That hearing, along with the parties' papers, establish the following facts by at least a preponderance of the evidence. Beginning in 2015, CVD and Cynosure entered into a long-term lease of a commercial property. While Defendant Slang Vermont ("Slang") guaranteed CVD's lease obligations starting in April 2022, those obligations were otherwise unsecured. In December 2024, CVD informed Plaintiff that it could not satisfy its obligations under the lease and that it would vacate the property by the end of the month. Cynosure asserts that its losses for unpaid rent, note payments, property taxes, utilities and maintenance expenses through the end of the lease term are $224,695.44 and that its total losses will likely exceed $772,034.44. Cynosure commenced this action on January 27, 2025; on January 30, 2025 the court issued the Order of Approval. The Order and Summons to Trustee were served on Eastrise on January 30, 2025; Eastrise signed its disclosure the same day and filed it on February 3, 2025.

Acquiom's interest in Defendants' assets is a bit more complicated. In November 2021, Acquiom's predecessor-in-interest, Seventh Avenue Investments, LLC ("Seventh Avenue"), entered

Decision on Motion to Dissolve Ex Parte Trustee Process
25-CV-00371 Cynosure, Inc. v. Champlain Valley Dispensary, Inc. et al

Page 1 of 7

into a $17.3 million credit and guaranty agreement ("Credit Agreement") with Slang[1] and CVD. Slang and CVD signed a note evidencing their indebtedness and a security agreement whereby Slang and CVD gave Seventh Avenue a security interest and lien against all of their assets. Seventh Avenue filed UCC financing statements with the Vermont Secretary of State that same month. In February 2022, Slang and Seventh Avenue entered into a Deposit Account Control Agreement ("Slang DACA") with regard to Slang's accounts at Vermont State Employees Credit Union ("VSECU"), which was Eastrise's predecessor. The Slang DACA assigned control of Slang's accounts with VSECU to Seventh Avenue. *See* 9A V.S.A. § 9-104(a)(2) (secured party has control of deposit account if the debtor and bank agree that bank will comply with secured party's instructions directing disposition of funds without further consent by debtor).

In November 2023, the parties to the Credit Agreement executed a successor agent agreement appointing Acquiom as successor administrator agent and successor collateral agent, giving Acquiom the right to enforce the Credit Agreement and all liens and security interests. Slang notified VSECU in November 2023 of the assignment to Acquiom. Seventh Avenue filed UCC statements with the Vermont Secretary of State amending earlier financing statements showing the assignment of its security interest in Slang's assets to Acquiom as its successor. In March 2024, CVD entered into a DACA assigning control of its accounts at Eastrise to Acquiom ("CVD DACA"). In October 2024, Eastrise and Acquiom amended the CVD DACA to acknowledge changes to certain account numbers and reflect the change in name from VSECU to Eastrise. These documents reflect that Acquiom has a present right to the funds covered by the two DACAs.

Eastrise's disclosure reveals that it holds two accounts in CVD's name: account no. xxxx083, with a balance of $497,617.67, and account no. xxxx709, with a balance of $224,417.33. The evidence makes clear that the latter of these is one of the two accounts covered by the CVD DACA. The evidence further makes clear that the former represents the proceeds of the other account covered by the CVD DACA. That account, however, had to be closed due to presentation of a fraudulent check; the funds were transferred to account no. xxxx709. The subsequent history of that account makes clear that all of its present funds are proceeds of the DACA account. *See* 9A V.S.A. § 9-315(a) (security interest in collateral continues notwithstanding exchange or other disposition and attaches to "any identifiable proceeds of collateral"); *id.* § 9-102(64) (defining "proceeds" as "whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral").

---

[1] The credit agreement was with Slang Worldwide, Inc. as well as the subsidiaries of Slang, including Slang Vermont and CVD. To avoid confusion, the court refers to all related entities as "Slang" unless there is a reason to differentiate them.

## Analysis

This is, at bottom, a dispute over the priority of claims against the two Eastrise accounts. It is therefore governed by the Uniform Commercial Code—specifically, Article 9, which concerns secured transactions. Section 9–322 makes clear that a perfected security interest has priority over an unperfected interest; it further makes clear that as between conflicting perfected security interests, the first to attach has priority. 9A V.S.A. § 9–322(a)(1), (a)(2). Finally, the same section provides that

> a security interest in collateral which qualifies for priority over a conflicting security interest under section 9-327 through 9-331 of this title also has priority over a conflicting security interest in:
>
> . . .
> (2) proceeds of the collateral if:
> (A) the security interest in proceeds is perfected; [and]
> (B) the proceeds are cash proceeds . . . .

*Id.* § 9–322(c).

The UCC also specifies when a security interest arises, and when it attaches. In the former regard, a security interest arises only if

> (1) value has been given;
> (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
> (3) one of the following conditions is met:
> (A) the debtor has authenticated a security agreement that provides a description of the collateral and, if the security interest covers timber to be cut, a description of the land concerned;
> (B) the collateral is not a certificated security and is in the possession of the secured party under section 9-313 of this title pursuant to the debtor's security agreement;
> (C) the collateral is a certificated security in registered form and the security certificate has been delivered to the secured party under section 8-301 of this title pursuant to the debtor's security agreement; or
> (D) the collateral is deposit accounts, electronic chattel paper, investment property, letter-of-credit rights, or electronic documents, and the secured party has control under section 7-106, 9-104, 9-105, 9-106, or 9-107 of this title pursuant to the debtor's security agreement.

*Id.* § 9–203(b). In the latter regard, "A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." *Id.* § 9–203(a). Here, it is clear that Acquiom's security interest in the two DACA accounts arose and attached no later than October 2024, when Eastrise and Acquiom amended the CVD DACA to acknowledge changes to account numbers and reflect the change in name from

VSECU to Eastrise.[2] In contrast, Cynosure's interest is still not a security interest within the meaning of the UCC, because none of the conditions of § 9–203(b) has been met. Thus, Acquiom's interest in the DACA accounts is clearly superior in priority to any interest Cynosure may assert—including any interest recognized by this court when it issued its Order of Approval.

It bears emphasis that the same conclusion would obtain even if the court's issuance of the Order of Approval and subsequent service of the resulting Summons to Trustee could be thought to recognize and perfect a security interest in the two accounts subsequently disclosed by Eastrise. Characterizing Cynosure's interest as a "security interest" cannot change the fact that it arose and attached later in time than Acquiom's interest in the DACA accounts. Thus, per 9A V.S.A. § 9–322(a)(1), Cynosure's interest would still be junior to Acquiom's.

With respect to priority of interests, this leaves only the question of the funds held in Eastrise account no. xxxx083. As discussed above, those funds all trace back to one of the CVD DACA accounts. Thus, per 9A V.S.A. § 9–322(c), Acquiom has a perfected security interest in account no. xxxx803, superior to any interest Cynosure may assert.

Cynosure insists nevertheless that by virtue of this court's Order of Approval, it is a "transferee" of the funds contained in the two Eastrise accounts within the meaning of 9A V.S.A. § 9-332(a), and so has a claim superior even to Acquiom's perfected security interest. It relies in this regard on two California cases that involved contests between a secured lender and an unsecured judgment creditor (*Orix Fin. Servs., Inc. v. Kovacs*, 167 Cal. App. 4th 242 (Cal Ct. App. 2008)) and a contest between a secured lender and a judgment creditor with a writ of execution (*Stierwalt v. Assoc. Third Party Admins.*, No. 16-mc-80059-EMC, 2016 WL 2996936 (N.D. Cal. May 25, 2016)). Both cases involved funds held in deposit accounts, and in both cases, the California courts determined that the judgment creditors were "transferees" who were entitled to the deposit's funds free of the claims by the secured creditors/lenders. *Orix*, 167 Cal. App. 4th at 250; *Stierwalt*, 2016 WL 2996936, at *8.

Whatever persuasive force these cases may have in another context, they have none here. Cynosure's reliance on these cases ignores a critical distinction between a court's recognition of judgment creditor status and its issuance of an order of approval for prejudgment attachment or trustee process. The latter is a provisional remedy that creates or enforces no substantive rights in the assets attached. Under no conceivable definition of the word "transfer" can the court be thought to have

---

[2] Indeed, it is likely that the security interest arose and was perfected in November 2021, when the parties signed the Credit Agreement. The court has not engaged in the process of tracing the funds in the two CVD DACA accounts back to that date—to the extent that the evidence before the court would even allow that exercise—because it is not material, in light of the fact that *any* interest Cynosure may have in those accounts—or any other of CVD's assets, for that matter—did not arise until after the filing of this suit.

transferred anything; all it has done is to place a hold on the assets until the parties' rights in them can be determined.

Two cases cited by Acquiom—including one from California, whose law Cynosure would suggest supports its argument—well illustrate this critical distinction. First, in *Zimmerling v. Affinity Fin. Corp.*, a judgment creditor sought to enforce a judgment against funds located in Massachusetts. 14 N.E.3d 325, 327 (Mass. App. Ct. 2014). Secured-lender intervenors claimed a priority interest in the funds. The trial court ordered that the judgment amount be deposited in an escrow account pending a resolution of who was entitled to the money. *Id*. The judgment creditor argued he was a "transferee" of the funds deposited into the escrow account pursuant to § 9-332, but the court disagreed. The court wrote:

> The language of UCC § 9–332 contemplates an actual transfer of "funds"—not an interest in funds—to a "transferee." Zimmerling acknowledges that the funds were never transferred to him, but asserts that he had an equitable interest in receiving the funds at a future date if the judge found that he was entitled to them. This equitable interest was inherently contingent, however, because the judge had ordered that no payments be made until Zimmerling's right to the money was established. "To deposit a sum in escrow is simply to deliver it to a third party to be held until the performance of a condition or the happening of a certain event." *Childs v. Harbor Lounge of Lynn, Inc.*, 357 Mass. 33, 35, 255 N.E.2d 606 (1970). Thus, the escrow arrangement was both conditional and contingent.

*Id*. at 328 (footnote omitted). The court concluded that the lender did not lose its legal title to the funds when they were transferred to the escrow account and that there was no "transfer" to the judgment creditor unless or until the court issued an order releasing the funds to the creditor. *Id*. at 330. Until such time, the judgment creditor had only an equitable, or contingent, interest in the funds, which was not superior to the lender's perfected security interest.

Second, in *Outsource, LLC v. Horizon Communications Technologies, Inc.*, a secured lender and an unsecured creditor both claimed an interest in a deposit account. No. B314438, 2023 WL 2605405 (Cal. Ct. App. Mar. 23, 2023). The creditor obtained an order of approval and writ of attachment on the account in an effort to secure funds to pay its breach of contract claim. *Id*. at *1. Relying on *Orix*, the creditor asserted that it was a "transferee" under § 9-332, and the secured lender claimed it had a superior claim to the funds. *Id*. at *3. The court found that the creditor was not a "transferee" within the meaning of the statute because the creditor had not yet prevailed in its lawsuit against the debtor; its interest in the funds was merely equitable—it had only a pre-judgment lien by writ of attachment rather than a judgment lien, as was the case in *Orix*. *Id*. at *3, 5.

Unlike the creditors in *Orix* and *Stierwalt*, Cynosure is not a judgment creditor. Rather, it is, at most, a lienholder with an equitable, or contingent, interest in the funds Eastrise holds in its accounts. As a result, Cynosure does not qualify as a "transferee" for purposes of 9A V.S.A. § 9-332. In short, its claim remains inferior to Acquiom's.

Finally, post-hearing, with permission from the court, Cynosure filed a supplemental submission advancing equitable arguments it had not made in its prior submissions, even though the court had taken the unusual step of allowing a surreply. In that submission, Cynosure suggests that Acquiom and the entities whose interests Acquiom protects through the Credit Agreement "are in fact major controlling shareholders and insiders of Defendant's parent company Slang Worldwide, and their 'loan' should be recharacterized as an unsecured equity investment." Pl.'s Memorandum of Law on Equitable Principles, p.2. Quoting *Bayer Corp. v. MascoTech, Inc.*, 269 F.3d 726, 747-48 (6th Cir. 2001), it asserts, "Recharacterization is appropriate where the circumstances show that a debt transaction was actually an equity contribution ab initio." The short answer to this assertion is that it is supported by no competent evidence. It also comes far too late in the day. Moreover, the careful analysis set forth in Acquiom's reply amply suggests that even were it supported by competent evidence—which would include evidence far more detailed and comprehensive than that hinted at by Cynosure's submission—Cynosure would have this court go where no Vermont court has gone, and where our Supreme Court is unlikely to go. The court need not go so far as to make this prediction, however, as the absence of competent evidence leaves Cynosure's argument with no factual support. Thus, the court declines Cynosure's invitation to wade into equitable waters.

# **ORDER**

The court grants the Motion to Dissolve. Acquiom is free to exercise its rights under the Credit Agreement and DACA(s), free of any claim Cynosure may assert against CVD's assets. Obviously, this includes Acquiom's right and interest in the two accounts disclosed by Eastrise; Cynosure's interest in those accounts is inferior and so properly cannot be the subject of attachment. The court therefore vacates its Order of Approval and dissolves the trustee process against those accounts.[3]

Electronically signed pursuant to V.R.E.F. 9(d): 7/15/2025 12:05 PM

_____
Samuel Hoar, Jr.
Superior Court Judge

---

[3] The court notes that it also issued an Order of Approval and Summons to Trustee directed to Ceres, LLC as trustee; Ceres failed to respond. Accordingly, by separate order, the court has granted Cynosure's Motion to Hold Defaulting Trustee Liable.