[No. A119605. First Dist., Div. Five. Sept. 30, 2008.]

ORIX FINANCIAL SERVICES, INC., Plaintiff and Appellant, v.
MIKE KOVACS et al., Defendants and Respondents.

## COUNSEL

Hauser & Mouzes and Raymond A. Policar for Plaintiff and Appellant.

Law Offices of James G. Schwartz, James G. Schwartz and Joshua D. Brysk for Defendant and Respondent Mike Kovacs.

No appearance for Defendant and Respondent Marius Marta.

## OPINION

**REARDON, J.**[*]—California Uniform Commercial Code section 9332, subdivision (b)[1] reads, "A transferee of funds from a deposit account takes the funds free of a security interest in the deposit account unless the transferee acts in collusion with the debtor in violating the rights of the secured party." This case presents a very narrow question—one of first impression in California: Is an unsecured judgment creditor, which satisfies its judgment from deposit account funds, included in the definition of "transferee" as contemplated by section 9332(b), such that it may take those funds free of any security interest?

Appellant, Orix Financial Services, Inc. (Orix), filed a complaint against defendants Mike Kovacs and Marius Marta, doing business as Bay Technology (collectively, Kovacs), for unjust enrichment and imposition of a constructive trust. The trial court, answering the foregoing question in the affirmative, sustained defendants' demurrer to the complaint without leave to amend. For purposes of our review, we therefore assume the truth of the allegations contained in the complaint (*Zelig v. County of Los Angeles* (2002)

---

[*] Judge of the Alameda Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] Hereafter, all statutory references are to the California Uniform Commercial Code. Additionally, for ease of reference, we refer to the statute in question here as section 9332(b) and to its cognate in the national Uniform Commercial Code (UCC) as section 9-332(b).

27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171]), and further conclude that the trial court was correct.

ADA Machine Company, Inc. (ADA), defaulted on financial obligations to Orix, which were secured by interests in all of ADA's goods, chattels and property. Approximately $1.5 million remains owing on those obligations. Separately, Kovacs obtained a judgment against ADA for $157,468.11 and, thereafter, a writ of execution against ADA's deposit accounts. All of the funds contained in these accounts were derived from the proceeds of the sale of ADA's inventory and collection of its accounts receivable. Kovacs's satisfaction of its judgment from these funds is the basis of Orix's complaint.[2]

Kovacs essentially concedes that Orix's position as a *secured* creditor is superior to Kovacs's own position as an *unsecured* creditor under a traditional creditors' priority analysis. However, Kovacs argues that such an analysis is irrelevant to the question of the satisfaction of a judgment from a *deposit account*, which it argues is wholly free of such a priority analysis in light of section 9332(b).

The provisions of the California Uniform Commercial Code are, in large part, identical to those of the UCC and versions adopted by jurisdictions around the country. A revised title 9 of the California Uniform Commercial Code was adopted in 1999 (Stats. 1999, ch. 991, § 35, operative July 1, 2001), following adoption in 1998 of a revised article 9 of the UCC by the permanent editorial board of the UCC. (9A Hawkland, Uniform Commercial Code Series (12/2000) rev. § 9-101, Official Com. 2, p. Rev. Art. 9-2.)

We quote at length from the UCC comment to its section 9-332: "2. **Scope of This Section.** This section affords broad protection to transferees who take funds from a deposit account and to those who take money.[3] The term 'transferee' is not defined; however, the debtor itself is not a transferee. Thus this section does not cover the case in which a debtor withdraws money (currency) from its deposit account or the case in which a bank debits an encumbered account and credits another account it maintains for the debtor. [¶] A transfer of funds from a deposit account, to which subsection (b) applies, normally will be made by check, by funds transfer, or by debiting the debtor's deposit account and crediting another depositor's account. [¶] . . . [¶] 3. **Policy.** Broad protection for transferees helps to ensure that security

---

[2] It is not clear from the pleadings whether satisfaction of Kovacs's judgment exhausted the funds in ADA's deposit account.

[3] Subdivision (a) of Uniform Commercial Code section 9-332 (and Cal. U. Com. Code, § 9332) is identical to subdivision (b) except that it pertains to the transfer of "money" rather than of "funds from a deposit account."

interests in deposit accounts do not impair the free flow of funds. It also minimizes the likelihood that a secured party will enjoy a claim to whatever the transferee purchases with the funds. Rules concerning recovery of payments traditionally have placed a high value on finality. The opportunity to upset a completed transaction, or even to place a completed transaction in jeopardy by bringing suit against the transferee of funds, should be severely limited. Although the giving of value usually is a prerequisite for receiving the ability to take free from third-party claims, where payments are concerned the law is even more protective. Thus, Section 3-418(c) provides that, even where the law of restitution otherwise would permit recovery of funds paid by mistake, no recovery may be had from a person 'who in good faith changed position in reliance on the payment.' Rather than adopt this standard, this section eliminates all reliance requirements whatsoever. Payments made by mistake are relatively rare, but payments of funds from encumbered deposit accounts (e.g., deposit accounts containing collections from accounts receivable) occur with great regularity. In most cases, unlike payment by mistake, no one would object to these payments. In the vast proportion of cases, the transferee probably would be able to show a change of position in reliance on the payment. This section does not put the transferee to the burden of having to make this proof. [¶] 4. **'Bad Actors.'** To deal with the question of the 'bad actor,' this section borrows 'collusion' language from Article 8. See, e.g., Sections 8-115, 8-503(e). This is the most protective (i.e., least stringent) of the various standards now found in the UCC." (9B Hawkland, Uniform Commercial Code Series (5/2001) rev. § 9-332, Official Coms. 2, 3 & 4, pp. Rev. Art. 9-493 to Rev. Art. 9-495.)

The prior version of title 9 of the California Uniform Commercial Code did not contain a section 9332. Similarly, the prior version of article 9 of the UCC did not contain a section 9-332. These sections find their provenance in Uniform Commercial Code, section 9-306, as it existed before the revision—specifically in comment 2(c) to that section, which read: "Where cash proceeds are covered into the debtor's checking account and paid out in the operation of the debtor's business, recipients of the funds of course take free of any claim which the secured party may have in them as proceeds. What has been said relates to payments and transfers in ordinary course. The law of fraudulent conveyances would no doubt in appropriate cases support recovery of proceeds by a secured party from a transferee out of ordinary course or otherwise in collusion with the debtor to defraud the secured party." (9 Hawkland, Uniform Commercial Code Series (9/2001) § 9-306, Official Com. 2(c), p. Art. 9-190.) The scope of the exception found in comment 2(c)—excepting fraudulent conveyances from the provision that a recipient of funds from a deposit account takes free from encumbrances—was the subject of litigation before the revision of the UCC.

■ In *Harley-Davidson Motor Co. v. Bank of New England* (1st Cir. 1990) 897 F.2d 611, 622 (*Harley-Davidson*), now Supreme Court Justice Breyer considered the scope of this exception: "Comment 2(c) explicitly excludes any judicial efforts to trace (as 'identifiable' secured 'proceeds') money 'paid out [of a commingled account] in the [*ordinary course* of] operation of the debtor's business.' [Citation.] That comment goes on explicitly to include transfers that are 'fraudulent,' or 'otherwise in collusion with the debtor to defraud the secured party,' [citation]; and, courts have recognized instances falling *between* these two sets of circumstances where tracing is appropriate, [citations]. If, however, courts too readily impose liability upon those who receive funds from the debtor's ordinary bank account—if, for example, they define 'ordinary course' of business too narrowly—then ordinary suppliers, sellers of gas, electricity, tables, chairs, etc., might find themselves called upon to return ordinary payments (from a commingled account) to a debtor's secured creditor, say a financer of inventory. Indeed, we can imagine good commercial reasons for *not* imposing, even upon sophisticated suppliers or secondary lenders, who are aware that inventory financers often take senior secured interests in 'all inventory plus proceeds,' the complicated burden of contacting these financers to secure permission to take payment from a dealer's ordinary commingled bank account. [Citation.] These considerations indicate that 'ordinary course' has a fairly broad meaning; and that a court should restrict the use of tracing rules to conduct that, in the commercial context, is rather clearly improper."

In *General Elec. Capital v. Union Planters* (8th Cir. 2005) 409 F.3d 1049, 1056 (*General Elec.*), the court considered the meaning of the "ordinary course" language in comment 2(c) and, in so doing, agreed with the analysis of the court in *Orix Credit Alliance, Inc. v. Sovran Bank, N.A.* (4th Cir. 1993) 4 F.3d 1262, 1266: "As to the plaintiff's claim that the depository bank knew that encumbered proceeds had been deposited, the [*Orix*] court said, '[A] transferee's knowledge of a prior security interest in proceeds does not, by itself, [suggest] that the transfer of these proceeds occurred outside the ordinary course of the debtor's business.' [Citation.] We agree with that statement and, like the court in *Orix*, we conclude that the phrase 'in the ordinary course,' means that the plaintiff must establish more than a defendant's knowledge of a superior security interest: It must establish either a lack of good faith or that the payee 'knows . . . that the [payment] is in violation of some term in the security agreement not waived by the words or conduct of the secured party.' [Citations.]"

A close examination of the language of comment 2(c) reveals an ambiguity. The comment speaks to recovery of proceeds from a transferee "out of ordinary course or otherwise in collusion with the debtor." In determining the definition of "out of ordinary course," the use of the word "otherwise"

suggests that conveyances are out of ordinary course when they are essentially collusive. If "collusive" means something other than "out of ordinary course," there would be no need for the word "otherwise." That is, the comment would simply except those conveyances that are out of ordinary course *or* collusive. On the other hand, if the terms mean the same thing, why use both? Or, why not use the conjunctive "and"?

In *HCC Credit v. Springs Valley Bank & Trust* (Ind. 1999) 712 N.E.2d 952, the Indiana Supreme Court considered this same language. In doing so, the court cited Justice Breyer's analysis in *Harley-Davidson* and anticipated the revisions to the UCC. (*Id.* at p. 956 & fn. 6.) The court determined that the " 'operation of the debtor's business' " and " 'collusion' " language in comment 2(c) were "descriptive of two parameters for determining 'ordinary course.' That is, whether a payment was made in the ordinary course will be a function of (1) the extent to which the payment was made in the routine operation of the debtor's business and (2) the extent to which the recipient was aware that it was acting to the prejudice of the secured party. [¶] As to the routine operation of business parameter, payment of sales tax collections or F.I.C.A. withholdings would obviously be at the most routine end and a one-shot payment of subordinated debt not yet due would be at the least. At various points between these extremes would fall payments ordered by how routine they were to both debtor and transferee—measured by such factors as their size, their frequency, whether the debtor received merchandise or services in return, whether the payment was on an obligation overdue, due or not yet due, etc. . . . . [¶] As to the awareness of prejudice parameter, it is hard to imagine the recipient of the monthly utility or rent payment having any knowledge that it was being paid with proceeds. At the other end of the spectrum is actual fraud in which debtor and recipient have colluded against the secured party." (*Id.* at pp. 956–957, fns. omitted.)

█ Significantly, upon the revision of the UCC and the adoption of section 9-332, the language regarding "operation of the debtor's business" and "ordinary course" did not make the transfer from comment 2(c), only the language regarding "collusion" did so. As noted in the comment to section 9-332, the "collusion" standard is the standard most protective of transferees and is, thus, consistent with that suggested by Justice Breyer in *Harley-Davidson* and arguably more protective than the standard suggested by *General Elec.* Thus, the history of the code and its amendments suggests that only those transferees who act in collusion with the debtor are excepted from the broad protections of section 9-332(b). Here, Orix did not allege that Kovacs acted in collusion with ADA to defeat Orix's interest. Instead, Orix contends that a judgment creditor is not the kind of transferee contemplated by section 9-332(b).

■ The broad language of the statute does not support Orix's contention. The drafters of the revised UCC, as well as our Legislature, had the opportunity to include the exception suggested by Orix in the language of the revised codes—the issue was certainly presented by the history of litigation on the subject. They did not do so; we will not do so in the first instance.

We note that the lion's share of transferees from a deposit account are creditors of one form or another—secured, unsecured, judgment, etc. For instance, a landlord and a utility company are creditors and are, ordinarily, unsecured. They would not be excepted from the protections of section 9-332(b). Thus, any suggestion that the rights of a secured creditor cannot be compromised by junior creditors is not persuasive. Indeed, as the comment to section 9-332 quoted above makes clear, a protected transferee need not be a creditor at all, but may have been paid by mistake or otherwise have provided no value to the debtor in exchange for the payment.[4]

■ Orix makes a series of contentions, which are each belied by the foregoing analysis. First, it contends section 9332(b) should not extend to a lien creditor who took possession of the funds by garnishment rather than any activity or payment by the debtor. As noted, Kovacs's status as a creditor is irrelevant, and there is no requirement that the debtor actively or even voluntarily make a payment. In support of the notion that there must be a volitional act by the debtor, Orix notes that the comment to section 9-332 repeatedly uses the word "payment" rather than "transfer." Certainly, any potential distinction, in this context, between the two words is rendered moot by the use of the word "transferee" and not "payee" in the code itself. Finally, Orix cites the policy found in the UCC comment to section 9-332 of preserving "completed transactions" and argues that what occurred here was not a transaction but a unilateral act. However, both California Uniform Commercial Code section 9332 and Uniform Commercial Code section 9-332 require only a transfer, which indisputably occurred.

■ Our analysis and conclusion are consistent with those of the federal bankruptcy court in *In re Machinery, Inc.* (Bankr. E.D.Mo. 2006) 342 B.R. 790, 798–799, which the trial court here relied upon in granting Kovacs's demurrer. Orix has at no time suggested it could allege collusion between ADA and Kovacs. Specifically, Orix never moved for leave to amend its complaint to so state. Indeed, its argument that ADA was passive and did not

---

[4] Example 1 to Section 2 of the comment reads in part: "Unless Payee acted in collusion with Debtor in violating Lender's rights, Payee takes the funds (the credits running in favor of Payee) free of Lender's security interest. This is true regardless of whether Payee is a holder in due course of the check *and even if Payee gave no value for the check.*" (9B Hawkland, Uniform Commercial Code Series, *supra*, rev. § 9-332, Official Com. 2, example 1, p. Rev. Art. 9-494, italics added.)

participate in the transfer (i.e., did not make a "payment") augers against any suggestion of collusion. Consequently, the trial court's order granting the demurrer without leave to amend was appropriate.

The judgment is affirmed. Respondents to receive costs on appeal.

Simons, Acting P. J., and Needham, J., concurred.

On October 16, 2008, the opinion was modified to read as printed above.