Filed 5/5/23 Liaison West Distribution v. West Central Produce CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LIAISON WEST DISTRIBUTION, INC., | |
| Plaintiff and Respondent, | G061288 |
| v. | (Super. Ct. No. 30-2020-01166843) |
| WEST CENTRAL PRODUCE, INC., | O P I N I O N |
| Defendant; | |
| WCP PARENT, LLC, | |
| Third Party Claimant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Nancy E. Zeltzer, Judge. Affirmed.

Buchalter, Matthew L. Seror and Robert M. Dato for Third Party Claimant and Appellant.

Ramsaur Law Office and Brett H. Ramsaur for Plaintiff and Respondent.

WCP Parent, LLC (Parent) appeals a trial court order denying its third-party claim of a superior security interest in bank funds levied by judgment creditor Liaison West Distribution, Inc. (Liaison West). Parent contends the court erred by misinterpreting certain provisions of the California Uniform Commercial Code.[1] But because Parent failed to adequately brief the issue, we conclude it has forfeited the issue on appeal. We thus affirm the order.

FACTS

After a years-long business relationship, West Central Produce, Inc. (WCP) failed to pay Liaison West for shipments of truffle oil. Liaison West sued and obtained a default judgment of nearly $35,000 against WCP for the unpaid invoices.

To collect on the judgment, Liaison West levied a writ of execution on a Wells Fargo Bank deposit account in WCP's name. The levy reached $34,906.66 of the $55,784.59 held in the account at the time.

While the funds were with the levying officer, Parent filed a third-party claim to establish that its security interest in the funds was superior to Liaison West's execution lien.[2] (Code Civ. Proc., § 720.210, subd. (a).) Parent claimed it was the assignee of certain loan documents executed by WCP and held a security interest in "all personal property of WCP, including money in bank accounts."

---

[1] All further statutory references are to the California Uniform Commercial Code unless otherwise indicated.

[2] "Resolving conflicting claims in the same collateral requires a three-step inquiry: First, has the security interest attached; second, has the security interest been perfected; and third, does the perfected security interest have priority. [Citation.] Once a security interest has attached to the debtor's collateral [citation], perfection of a security interest makes it enforceable against third parties and priority determines which of competing claims to collateral will take precedence [citation]." (*Oxford Street Properties, LLC v. Rehabilitation Associates, LLC* (2012) 206 Cal.App.4th 296, 308.)

The third-party claim set forth the following facts to support the security interest: WCP borrowed money from and opened a $30 million demand line of credit with HSBC Bank USA (HSBC), as memorialized in a loan agreement and working-capital-line letter agreement. WCP executed a $2.25 million term note, a $1.75 million line of credit, and a $30 million revolving demand note. To secure the debt, WCP executed three security agreements granting HSBC a security interest in all of WCP's personal property. To perfect its security interest, HSBC filed three Uniform Commercial Code (UCC) financing statements, each identifying HSBC as the secured party, WCP as the debtor, and the collateral as "[a]ll Personal Property now owned or hereafter acquired." HSBC later assigned its interests in these loans, lines of credit, security agreements, and UCC financing statements to Parent for $3.25 million. This assignment was also reflected in three filed UCC financing statement amendments. Parent valued its secured claims against WCP at $28 million and asked the trial court to order the levied funds released to it, instead of Liaison West.

Liaison West conceded Parent's security interest was created and had attached to WCP's personal property before the execution lien, but it raised two points in opposition. First, it claimed Parent failed to show a perfected security interest in the Wells Fargo account because there was no evidence Parent controlled the account. (§§ 9104, 9314, subd. (a) [ "control" necessary to perfect security interest in deposit account].) Second, it maintained that notwithstanding a perfected security interest held by Parent, it took the levied funds free and clear pursuant to section 9332, subdivision (b) (section 9332(b)) and *Orix Financial Services, Inc. v. Kovacs* (2008) 167 Cal.App.4th 242 (*Orix Financial Services*). Section 9332(b) provides, subject to an exception not applicable here, that "[a] transferee of funds from a deposit account takes the funds free of a security interest in the deposit account[.]" And the court in *Orix Financial Services* held "an unsecured judgment creditor, who satisfies its judgment from deposit account funds, [is] included in the definition of 'transferee' as contemplated by section 9332(b),

3

such that it may take those funds free of any security interest." (*Orix Financial Services*, at p. 246.)

Parent in turn filed a response brief that cited only section 9315 in support of its position. It asserted for the first time that the levied funds represented proceeds of WCP's accounts receivable, and WCP's chief financial officer filed a declaration to that effect. Parent contended its security interest in the accounts receivable was perfected by filing the UCC financing statements and continued to be perfected as "identifiable cash proceeds" in the Wells Fargo account. (§ 9315, subds. (c)-(d).) Without citation to authority, it argued Liaison West was not a "transferee" under section 9332(b) because it "never actually took possession of the funds at issue." Parent interpreted section 9315, subdivision (f) (section 9315(f)), which provides that "[c]ash proceeds retain their character as cash proceeds while in the possession of the levying officer pursuant to . . . [the Enforcement of Judgment Laws]," to mean that Liaison West could not be a transferee while the levying officer held the funds. According to Parent, *Orix Financial Services* was factually distinguishable because the judgment creditor there actually possessed the funds.

In reply, Liaison West cited an unpublished opinion in which a federal district court, expanding on *Orix Financial Services*, concluded "that there was a transfer pursuant to § 9332(b) when the U.S. Marshal levied upon the bank account, such that [the judgment creditor] 'takes the funds free of a security interest in the deposit account.'" (*Stierwalt v. Associated Third Party Administrator* (N.D.Cal. May 25, 2016, No. 16-mc-80059-EMC) 2016 U.S. Dist. LEXIS 68744, at *21-23 (*Stierwalt*).)

4

A hearing was held on the third-party claim.[3]  As neither *Orix Financial Services* nor *Stierwalt* discussed section 9315(f), the trial court asked for "supplemental briefing on whether [s]ection 9315(f) impacts Liaison West's status as a transferee of the [l]evied [f]unds under [s]ection 9332(b)."

In its supplemental briefing, Liaison West argued section 9315(f) "exists, by its own language, simply to preserve the character of funds held by a levying officer during the claims determination process—not to *alter* the legal analysis of such third-party claim adjudication, such as a determination of rights under section 9332(b) here." (Boldface omitted.)  It further contended section 9332(b) (as the more specific statute that applies to funds transferred from a deposit account) controlled over section 9315(f) (the more general provision about whether a security interest survives disposition of collateral).

Parent's supplemental brief cited section 9315(f) again and asked the trial court to accept its interpretation of the competing statutes over the construction offered by Liaison West.  The court noted the absence of new law in Parent's briefing: "Not surprisingly, no[ ] additional decisional authority was unearthed addressing this very specific issue."

Ultimately, the trial court denied Parent's claim.  Despite finding Parent had "a superior, perfected, security interest in the subject account," the court concluded "Liaison West is a transferee of the levied funds for purposes of section 9332(b) and takes the funds free of WCP Parent's security interest."  The court interpreted section 9315(f) as not impacting or changing its analysis of who has priority over the funds.  In the court's view, the levying officer was "similar to a middleman," Liaison West was the transferee, and the levy was "complete" when the funds reached the levying officer.

---

[3] Parent elected to proceed without a record of oral proceedings.

Accordingly, the court denied Parent's third-party claim and directed payment of the levied funds to Liaison West.

## DISCUSSION

Parent contends that unless and until Liaison West receives the funds from the levying officer, Liaison West cannot invoke section 9332(b) to defeat Parent's perfected security interest in those funds. Parent asks us to instead determine that section 9315(f) prevails over section 9332(b). Parent does not cite, nor could we find, case law examining the interplay between these provisions. The issue calls for statutory interpretation—an effort that Parent failed to adequately undertake. For this reason, we conclude the issue is forfeited on appeal.

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct[.]" (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) "The one contesting that result thus bears the burden of showing legal error. That requires legal authority." (*Singman v. IMDB.com, Inc.* (2021) 72 Cal.App.5th 1150, 1151 (*Singman*); Cal. Rules of Court, rule 8.204(a)(1)(B) [appellate brief must "support each point by argument and, if possible, by citation of authority"].) "'Mere suggestions of error without supporting argument or authority other than general abstract principles do not properly present grounds for appellate review.'" (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 (*Multani*).) Simply put, "[a]n absence of legal authority forfeits an appellant's cause." (*Singman*, at pp. 1151-1152.)

"[T]he objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340.) Under well-settled principles, "[t]his process involves up to a three-step inquiry in which 'we first look to the plain meaning of the statutory language, then to its legislative history and finally to the reasonableness of a proposed construction.'" (*290 Division (EAT), LLC v. City and County of San Francisco* (2022) 86 Cal.App.5th 439, 453.)

Parent relies primarily on the first step of this process, the plain meaning of the statutory language. It states "the purpose of [section 9315(f)] is to maintain the status quo of assets" held by the levying officer while the court determines who has priority. Without citation to authority, Parent jumps to the conclusion that the trial court changed the characterization of the funds—in contravention of section 9315(f)—by treating Liaison West as a transferee under section 9332(b). In essence, Parent contends a levying officer who possesses funds levied from a deposit account is not a "transferee" within the meaning of section 9332(b). This argument, however, skips past a discussion of the plain meaning of section 9332(b).

To ascertain a statute's plain meaning, "'[w]e consider the ordinary meaning of the relevant terms, related provisions, terms used in other parts of the statute, and the structure of the statutory scheme.'" (*Hirschfield v. Cohen* (2022) 82 Cal.App.5th 648, 660.) "'The meaning of a statute may not be determined from a single word or sentence[.]'" (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659.) "'[E]ven though a statute may appear to be unambiguous on its face, when it is considered in light of closely related statutes a legislative purpose may emerge that is inconsistent with, and controlling over, the language read without reference to the entire scheme of the law.'" (*Hirschfield*, at p. 660.) If the statutory text "is unambiguous and provides a clear answer, we need go no further." (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758.)

Parent's reading of section 9315(f) is not so clear-cut when considered against the text of section 9332(b). As relevant here, section 9332(b) provides that "[a] transferee of funds a deposit account takes the funds free of a security interest in the deposit account[.]" The term "transferee" is not defined under section 9332(b), but it is commonly understood as "a person to whom a conveyance or transfer is made." (Webster's 3d New Internat. Dict. (2002) p. 2427.) A levying officer who receives bank funds appears to fit within this definition. Although the term "transferee" is not found in

7

section 9315, the Assembly Committee comment to section 9315 states there are "several provisions under which a transferee takes free of a security interest" and "[s]ection 9332 enables most transferees (including non-purchasers) of funds from a deposit account . . . to take free of a perfected security interest in the deposit account[.]" (Assem. Com. com., 23B pt.2 West's Ann. Cal. Comm. Code, 1999 Addition, foll. § 9315, p. 322.) The recognition that section 9332 may prevail over section 9315 cuts against Parent's plain-meaning interpretation of section 9315(f).

Because the statutory text is unclear, it is necessary to look to legislative history and other interpretative aids. (*Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 618.) Parent contends that application of section 9332(b) here would nullify the third-party claim procedures in the Enforcement of Judgment Laws. (§§ 720.210 et seq. & 720.310 et seq.) Unfortunately, Parent provides no analysis of the legislative history of section 9315(f) or the Enforcement of Judgment Laws generally. Without "'meaningful legal analysis supported by citations to authority,'" this generalized complaint fails to satisfy Parent's "'burden to affirmatively show error.'" (*Estrada v. Royalty Carpet Mills, Inc.* (2022) 76 Cal.App.5th 685, 730.)

In short, Parent's failure to undertake meaningful or reasoned statutory interpretation dooms this appeal. As presented, its briefing "effectively asks the appellate court to become the appellant's lawyer. A court cannot fairly embrace this partisan role." (*Singman*, *supra*, 72 Cal.App.5th at pp. 1151-1152.)

## DISPOSITION

The order is affirmed.  Respondent to recover costs on appeal.


DELANEY, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


SANCHEZ, J.